IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Ignacio Saenz, | ) | No. CV-13-77-PHX-JAT (LOA) |
| Petitioner, | ) ) | **REPORT AND RECOMMENDATION** |
| vs. | ) ) | |
| Jeffrey Van Winkle, et al., | ) ) ) | |
| Respondents. | ) ) ) | |

This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in which Petitioner challenges criminal convictions in Pinal County, Arizona, Superior Court Case No. CR200601131. (Doc. 1) Respondents filed an Answer to Petition for Writ of Habeas Corpus Limited to Affirmative Defenses and Petitioner filed a Reply. (Docs. 13, 14)  As explained below, the undersigned Magistrate Judge recommends the Petition be denied.

**I. Background**

**A. Factual Summary**

In its Memorandum Decision on direct appeal, the Arizona Court of Appeals summarized the facts of this case as follows:

> On June 23, 2006, at 8:55 p.m., Arizona Department of Public Safety Officer Manjarres was patrolling Interstate 8 in Pinal County.  He observed a pick-up truck, driven by Saenz, "cross[] over the solid white line . . . that separates the slow lane from the emergency lane" for approximately three feet and then return to the driving lane.  He followed the truck, determined it was going sixty miles per hour in a seventy-five-mile-per-hour zone, and observed it travel into the emergency lane again.  He then initiated a traffic stop.

When Saenz rolled down the window, Manjarres smelled a "moderate odor of alcohol emitting from the vehicle."  He noticed Saenz's face was flushed and his speech slurred.  Saenz agreed to perform two field sobriety tests but refused to perform a third.  Based on his performance on the tests, Manjarres decided to arrest Saenz for driving under the influence of intoxicating liquor (DUI) while impaired to the slightest degree.  Saenz physically resisted as Manjarres attempted to place handcuffs on him, so Manjarres released him to create distance and drew his taser.  As Saenz ran toward his truck, Manjarres fired his taser, hitting Saenz in the back.  Saenz removed the taser "probes" and fled in his truck.  A twenty-six mile chase ensued, ending when Saenz drove his truck into the desert, turned off his lights, and fled on foot.  Saenz was arrested at his place of work a few days later.

(Doc. 13-2 at 93-94)

**B. Indictment, Trial and Sentencing**

On July 6, 2006, the State of Arizona indicted Petitioner on one count of Resisting Arrest, a class six felony (Count 1), one count of Unlawful Flight from a Law Enforcement Vehicle, a class five felony (Count 2), and one count of Escape, a class six felony (Count 3). (Doc. 13-1 at 3)[1] Following a jury trial in January 2009, the jury found Petitioner guilty of all three counts. (Doc. 13-1 at 30-37).[2] In addition, the jury found the State of Arizona proved six aggravating circumstances. (Doc. 13-1 at 38) On February 2, 2009, the trial court sentenced Petitioner to prison terms of 2.75 years each on Counts 1 and 3, and 3.75 years on Count 2, all to run consecutively. (Doc. 13-1 at 44-48) The severity of the overall sentence was due, in large part, to the aggravating factors, including prior felony convictions. (Doc. 13-2 at 6-8)

**C. Direct Review**

Petitioner filed a timely Notice of Appeal on February 12, 2009. (Doc. 13-1 at 49) Through counsel, Petitioner filed an Opening Brief on June 2, 2009. (Doc. 13-2 at 53-78)

---

[1] The docket and page numbers cited were generated by the Court's case management and electronic filing system. They do not reflect any pre-printed numbers on the documents.

[2] The Honorable Delia Neal, Judge Pro Tem, presided over Petitioner's trial and sentencing.

1    After the State filed an Answering Brief,[3] Petitioner filed a Reply Brief on January 28, 2010.

2    (Doc. 13-2 at 80-90)   On April 30, 2010, the Arizona Court of Appeals issued a

3    Memorandum Decision in which it affirmed Petitioner's convictions and sentences. (Doc.

4    13-2 at 92-101) A subsequent *pro se* Motion for Reconsideration and for New Trial was

5    denied by the Court of Appeals on June 15, 2010. (Doc. 13-2 at 103-133, 134) On July 1,

6    2010, Petitioner filed a Petition for Review with the Arizona Supreme Court. (Doc. 13-2 at

7    144-146) The Arizona Supreme Court denied review on September 30, 2010. (Doc. 13-2 at

8    148) Petitioner did not file a petition for writ of *certiorari* in the United States Supreme

9    Court. (Doc. 1 at 3)

10            **D. State Post-Conviction Proceedings**

11           While his direct appeal was pending, Petitioner filed a Notice of Post-Conviction

12   Relief on March 12, 2009. (Doc. 13-2 at 179-182) Petitioner's court-appointed counsel on

13   direct appeal also initially represented him in the post-conviction proceedings. (Doc. 13-2

14   at 184-185) On October 15, 2010, Petitioner filed another Notice of Post-Conviction Relief

15   which the trial court appeared to treat as a *pro se* petition for post-conviction relief because

16   the court addressed the claims raised therein in a subsequent decision. (Doc. 13-4 at 20-29

17   and 78-80) On December 9, 2010, the trial court granted Petitioner's request to proceed *pro*

18   *se* in the post-conviction proceedings and set a briefing schedule for the State's response to

19   the post-conviction petition and Petitioner's reply. (Doc. 13-4 at 16-17)   On January 14,

20   2011, the State filed a Response to Defendant's Petition for Post-Conviction Relief (Doc. 13-

21   4 at 48-52) Petitioner then filed a Reply on February 16, 2011. (Doc. 13-4 at 54-76) On

22   March 30, 2011, the trial court rejected the claims Petitioner raised in his post-conviction

23   petition and denied relief. (Doc. 13-4 at 78-80)  Petitioner did not seek review in the Arizona

24   Court of Appeals. (Doc. 13-5 at 56-57)

25           On November 28, 2011, Petitioner filed a second Notice of Post-Conviction Relief.

26   (Doc. 13-5 at 59-63) On December 8, 2011, the trial court dismissed the notice and denied

27   _____

28        [3] The State's Answering Brief is referenced but was not included in the State court record submitted by Respondents.

1   post-conviction relief after finding that despite Petitioner's claim to the contrary, the notice

2   did not allege newly discovered facts. (Doc. 13-5 at 65-66) The court ruled that because

3   Petitioner's claims could have been alleged during the direct appeal or first post-conviction

4   proceedings, they were precluded. (*Id.*)  On December 29, 2011, Petitioner filed a Petition

5   for Review with the Arizona Court of Appeals. (Doc. 13-5 at 68-81) On March 16, 2012, the

6   Court of Appeals issued a Memorandum Decision, granting review but denying relief. (Doc.

7   13-5 at 82-85) The Court of Appeals concluded, "The trial court correctly dismissed Saenz's

8   notice for failure to state a non-precluded claim." (*Id.* at 84 (citing Ariz. R. Crim. P. 32.2(b))

9   Petitioner's Motion for Reconsideration was denied by the Court of Appeals on April 17,

10  2012. (Doc. 13-5 at 87-92) Petitioner then filed a Petition for Review with the Arizona

11  Supreme Court, which was denied on September 13, 2012. (Doc. 13-5 at 94-107)

12  **E. Federal Habeas Petition**

13  On January 9, 2013, Petitioner filed his Petition for Writ of Habeas Corpus in this

14  District Court.[4]  (Doc. 1)  Petitioner identifies four grounds for relief in the Petition. (Doc.

15  1 at 6-9) In Ground One, Petitioner alleges his sentences were excessive in violation of the

16  Eighth Amendment. Petitioner contends one of the aggravating factors the trial court relied

17  on to enhance his sentences, covering up an offense, was inherent in the crime of escape and

18  thus should not have been used as an aggravating factor. Alternatively, Petitioner contends

19  there was insufficient evidence to show he attempted to cover up an offense.  In Ground

20  Two, Petitioner alleges his trial attorney provided ineffective assistance of counsel when the

21  attorney failed to provide to the jury the results of a mental health evaluation that showed

22  Petitioner was not a sane mind when the offenses were committed. In Ground Three,

23  Petitioner alleges the trial court violated his Sixth Amendment rights when the court refused

24  to allow Petitioner to present evidence at trial of his mental health status. Lastly, in Ground

25  _____

26  [4] The docket reflects the Petition was actually filed on January 11, 2013. (Doc. 1) The
    January 9, 2013 filing date is the date Petitioner signed the Petition, doc. 1 at 31, and reflects
27  the application of the prison mailbox rule, *i.e.*, a petition is deemed filed on the date it is
    delivered to prison authorities for mailing. *See Jenkins v. Johnson*, 330 F.3d 1146, 1149 n.
28  2 (9th Cir. 2003).

1    Four, Petitioner alleges the trial court violated his Sixth Amendment rights when the court
2    relied on improper aggravating factors when sentencing him and failed to take into account
3    appropriate mitigating factors. On May 8, 2013, Respondents filed their Answer to Petition
4    for Writ of Habeas Corpus Limited to Affirmative Defenses. (Doc. 13)  Petitioner filed his
5    Reply on July 15, 2013.  (Doc. 14)

6    **II.  Discussion**

7    Respondents argue Petitioner failed to exhaust his State-court remedies for the claims
8    he raised in this federal Petition and the claims are procedurally defaulted. Respondents
9    further argue the claims should be dismissed because Petitioner has not presented valid
10    reasons to excuse the defaults. The undersigned Magistrate Judge finds that Petitioner's
11    claims are clearly procedurally defaulted and the Petition should be denied on that basis.

12    **A. Procedural Default**

13    **1. Legal Standards**

14    A state prisoner must exhaust his remedies in state court before petitioning for a writ
15    of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Henry*, 513 U.S.
16    364, 365-66 (1995); *McQueary v. Blodgett*, 924 F.2d 829, 833 (9th Cir. 1991). To properly
17    exhaust state remedies, a petitioner must fairly present his claims to the state's highest court
18    in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A
19    petitioner "must give the state courts one full opportunity to resolve any constitutional issues
20    by invoking one complete round of the State's established appellate review process." *Id.* at
21    845. In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals
22    by properly pursuing them through the state's direct appeal process or through appropriate
23    post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v.
24    Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).

25    "In order to 'fairly present' an issue to a state court, a petitioner must 'present the
26    substance of his claim to the state courts, including a reference to a federal constitutional
27    guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*,
28    738 F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir.

2009)); *see also Tamalini v. Stewart*, 249 F.3d 895, 898-99 (9th Cir. 2001) (finding the petitioner failed to fairly present his federal claims to the state court because he did not describe the operative facts and federal legal theory upon which his claims were based) (citations omitted). "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001). "If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court." *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996). "Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citing *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)).

If a petition contains claims that were never fairly presented in the state court, the federal court must determine whether state remedies remain available to the petitioner. *See Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Harris v. Reed*, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring). If remedies are still available in state court, the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. *Id.* If the federal court finds, however, that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (holding that a claim is procedurally defaulted "if the petitioner failed to exhaust state court remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred"); *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002) (a defendant's claim is procedurally defaulted when it is clear the state court would hold the claim procedurally barred). Federal habeas review of these claims is barred unless the petitioner can establish cause for the default and actual prejudice resulting therefrom, or demonstrate that failure to consider the claim would result in a miscarriage of justice. *See,*

1   *e.g., Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Schlup v. Delo*, 513 U.S. 298, 321 (1995);

2   *Coleman*, 501 U.S. at 750;  *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

3   "'Cause' must be something *external* to the petitioner, something that cannot be fairly

4   attributed to him: We think that the existence of cause for a procedural default must

5   ordinarily turn on whether the prisoner can show that some objective factor external to the

6   defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501

7   U.S. at 753 (emphasis in original) (internal quotation mark omitted). To show prejudice, the

8   "habeas petitioner must show 'not merely that the errors at . . . trial created a *possibility* of

9   prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

10  trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United

11  States v. Frady*, 456 U.S. 152, 170 (1982) (omission and emphasis in original). "Miscarriage

12  of justice" is a narrow exception to the cause requirement "in an extraordinary case, where

13  a constitutional violation has probably resulted in the conviction of one who is actually

14  innocent" of the substantive offense. *Murray*, 477 U.S. at 496. Under such circumstances,

15  "a federal habeas court may grant the writ even in the absence of a showing of cause for the

16  procedural default." *Id.*

17        **2. Analysis**

18        **a. Direct Appeal Claims**

19  Here, Petitioner failed to fairly present to the Arizona courts on direct review the

20  claims he asserts in his federal habeas petition. In his opening brief on direct appeal,

21  Petitioner presented two claims. (Doc. 13-2 at 53-78)  First, Petitioner argued the trial court

22  relied on improper aggravating factors to increase his sentence. Second, he argued the trial

23  court failed to take into account appropriate mitigating factors.

24        Regarding the first issue, Petitioner argued that, under Arizona statutes and case law,

25  the trial court improperly relied on a particular aggravating factor, attempt to cover up the

26  crime, that also constituted an element of one of Petitioner's offenses. (Doc. 13-2 at 66-71)

27  He further argued that Arizona law requires the trial court to balance the aggravating and

28  mitigating circumstances before imposing the sentence, and some of the aggravating factors

relied on by the trial court were duplicative. Petitioner cited only Arizona statutes and case law in making these arguments.

Petitioner did make one reference to federal law at the beginning of his argument. Petitioner asserted that "[w]eighing the same aggravator more than once violates the prohibition on double jeopardy of the Fifth Amendment of the United States Constitution." (Doc. 13-2 at 66)  Petitioner failed, however, to further address that Fifth Amendment assertion and analyze how his sentences allegedly violated the prohibition on double jeopardy. Regardless, none of Petitioner's four grounds for relief in the instant habeas petition allege a double jeopardy or Fifth Amendment violation. Thus, assuming *arguendo* Petitioner's reference to the Fifth Amendment was sufficient to exhaust the issue, which it did not, because he fails to raise a Fifth Amendment claim here, it is of no consequence.

Regarding the second argument Petitioner raised on direct appeal, Petitioner again relied on Arizona statutes and case law to argue the trial court failed to properly take into account appropriate mitigating factors. (Doc. 13-2 at 71-75) He again cited an Arizona statute that requires the trial court to balance aggravating and mitigating factors and cited Arizona case law to argue that a trial court may not simply disregard mitigating circumstances. Petitioner further argued that Arizona law requires a trial court to consider evidence of "impaired capacity" as a potential mitigating factor. (Doc. 13-2 at 72-74) Nowhere in Petitioner's second claim on direct appeal does he reference the United States Constitution or argue a violation thereof.

As noted above, Petitioner also filed a *pro se* Motion for Reconsideration and for New Trial after the Court of Appeals denied his direct appeal, and a *pro se* Petition for Review with the Arizona Supreme Court. (Doc. 13-2 at 103-133, 144-146) Upon review of those filings, this Magistrate Judge finds Petitioner failed to present any of the federal constitutional claims he raises here in his habeas petition.

### b. Post-Conviction Relief Claims

On post-conviction relief, Petitioner again failed to fairly present to the Arizona courts the federal constitutional claims he raises here on his federal habeas review. In his first post-

1    conviction proceedings, Petitioner submitted a *pro-se* petition for post-conviction relief that

2    raised a number of claims that were difficult to discern. (Doc. 13-4 at 20-36) In its order

3    denying the post-conviction petition, the trial court identified several claims, none of which

4    is among the claims Petitioner presents here in his habeas petition.[5] (Doc. 13-4 at 78-80) As

5    the trial court order states, Petitioner claimed his release order was altered to remove the

6    words "with prejudice"; he was never arraigned on the charges for which he was convicted;

7    he was not timely served with the indictment containing the charges against him; and he is

8    actually innocent of the offenses, among other contentions. (*Id.*) Likewise, this Magistrate

9    Judge's review of the post-conviction relief petition confirms that none of the claims

10   Petitioner raises here in his habeas petition were presented in his first petition for post-

11   conviction relief. Moreover, as noted above, Petitioner did not seek review of the trial court's

12   denial. Thus, no claims from Petitioner's first post-conviction proceedings were presented

13   to the Arizona Court of Appeals.

14       In the second post-conviction proceedings, Petitioner again submitted a *pro se* petition

15   that contains none of the federal constitutional claims he raises in his habeas petition. (Doc.

16   13-5 at 59-63) It appears Petitioner argued the trial court erred by considering prior

17   convictions that were more than ten years old, in violation of Rule 609 of the Arizona Rules

18   of Evidence. In the instant federal habeas petition, however, Petitioner fails to raise any error,

19   constitutional or otherwise, with respect to the trial court's alleged consideration of prior

20   convictions that were more than ten years old.

21       Plaintiff also makes a conclusory claim of ineffective assistance of counsel "for failure

22

23

---

24   [5] Although the trial court identifies an ineffective-assistance-of counsel claim that
     Petitioner raised in his post-conviction petition, it is not the same ineffective assistance claim
25   Petitioner has raised in his federal habeas petition. In the habeas petition, Petitioner alleges
     his trial attorney provided ineffective assistance of counsel by failing to present to the jury
26   the results of a mental health evaluation that showed Petitioner was not of a sane mind when
     the offenses were committed. Petitioner's vague claim of ineffective assistance in his post-
27   conviction petition appears to allege all of his attorneys in the case failed to obtain a
     transcript of his arraignment in July 2006 which, he contends, would have shown he was not
28   arraigned on the charges for which he was ultimately convicted. (Doc. 13-4 at 23)

to present evidence and witnesses to argue against the State in this case." (Doc. 13-5 at 63) This claim, however, differs from the ineffective assistance claim Petitioner raises in his habeas petition and thus has no effect on Petitioner's failure to exhaust the ineffective assistance claim.

Also in the second post-conviction petition, Petitioner summarily asserts that his rights under the Sixth, Eighth and Fourteenth Amendments were violated in this case because he lost "a right essential to his defense" and "was unable to receive a fair trial in this case." (*Id.*) It is unclear whether Petitioner is attempting to tie the alleged constitutional violations to the trial court's consideration of convictions that were more than ten years old. Regardless, Petitioner fails to explain how his federal constitutional rights were allegedly violated. Petitioner's "general appeals to broad constitutional principles . . . are insufficient to establish exhaustion." *See Hivala*, 195 F.3d at 1106.

In his petition for review to the Arizona Court of Appeals, Petitioner's claims are again based on his contention that the trial court erroneously considered prior convictions that were more than ten years old. (Doc. 13-5 at 68-80)  Because no such claim is alleged in the instant habeas petition, the petition for review does nothing to establish exhaustion of the claims alleged in the habeas petition.

Like Petitioner's direct appeal, Petitioner has failed to fairly present to the Arizona courts on post-conviction relief the claims he asserts here in the District Court. By not presenting his habeas claims to the Arizona Court of Appeals, Petitioner has failed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *See O'Sullivan*, 526 U.S. at 845. Petitioner has, therefore, failed to exhaust his State-court remedies. Moreover, Petitioner no longer has a remedy if he returned to the Arizona courts.[6] As a result, his claims

---

[6]Arizona Rule of Criminal Procedure 32.2(a)(1) provides that a defendant is precluded from post-conviction relief on any ground that could have been raised on direct appeal. In addition, the time has passed to seek post-conviction relief in the State court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure and Petitioner has not shown any of the exceptions to the time limits identified in Arizona Rules of Criminal Procedure 32.1(d), (e),

1    are procedurally defaulted.

2        Although Petitioner filed a lengthy reply, he does not address procedural default. (*See*

3    Doc. 14) Rather, he argues factual and procedural issues that he claims show he was

4    wrongfully convicted. Additionally, he cites extensively from the Ninth Circuit Court of

5    Appeals decision in *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013), in which Milke was granted

6    habeas relief. Petitioner appears to claim he is entitled to relief for similar reasons. Nothing

7    in the reply, however, establishes cause for the procedural default and resulting prejudice.

8    Petitioner has also not demonstrated that the failure to consider his claims on the merits

9    would result in a miscarriage of justice.

10       **B. Conclusion**

11       For the foregoing reasons, the undersigned Magistrate Judge finds Petitioner failed

12   to exhaust his State-court remedies and, because such remedies are no longer available, his

13   federal habeas claims are procedurally defaulted. Additionally, Petitioner has failed to show

14   cause to excuse the default, and he has not demonstrated a miscarriage of justice.

15   Accordingly, this Magistrate Judge will recommend the habeas petition be denied.

16       Based on the foregoing,

17       **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28

18   U.S.C. § 2254, doc. 1, be **DENIED**;

19       **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave

20   to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is

21   justified by a plain procedural bar and jurists of reason would not find the procedural ruling

22   debatable.

23       This recommendation is not an order that is immediately appealable to the Ninth

24   Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

25   Appellate Procedure, must not be filed until entry of the District Court's judgment. The

26   parties have 14 days from the date of service of a copy of this recommendation within which

27

28   _____

     (f), (g) or (h) apply to him.

to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. *See* Fed.R.Civ.P. 72.

DATED this 3rd day of February, 2014.

Lawrence O. Anderson
United States Magistrate Judge